**Robert C. ROE, Plaintiff-Appellant,**

v.

**GENERAL AMERICAN LIFE INSURANCE CO. and Phillips Petroleum Co., Defendants-Appellees.**

No. 81–1654.

United States Court of Appeals,
Tenth Circuit.

July 22, 1983.

Robert W. Blackstock of Blackstock & Associates, Bristow, Okl., for plaintiff-appellant.

David B. McKinney, Tulsa, Okl. (T.H. Eskridge of Boesche, McDermott & Eskridge, Tulsa, Okl., with him on brief), for General American Life Ins. Co., defendant-appellee.

Before McWILLIAMS, DOYLE and LOGAN, Circuit Judges.

McWILLIAMS, Circuit Judge.

This appeal concerns a suit brought by an insured against an insurance company over a disability insurance policy issued the former by the latter. In a trial to the court, the district court found that the insured had ceased being "disabled," as that term is used in the policy of disability insurance, and that the insurer was justified in terminating disability payments. The district court further entered judgment in favor of the insurance company and against the insured on the company's counterclaim which was based on certain disability payments paid the insured because of error and mistake. The insured appeals. We affirm.

Robert C. Roe was employed by Phillips Petroleum Company in July, 1961, as a service station attendant at its station in Stroud, Oklahoma. He continued in the employ of Phillips until 1972, when he ceased work for Phillips because of a disability resulting from nonjob-related activities. Roe had been injured in two automobile accidents, and, in addition, had fallen out of the back of a truck while feeding cattle, and he also suffered from arthritis.

During his employment with Phillips from 1961–1972, Roe elected to participate in a group life insurance program made available by Phillips to its employees through the General American Life Insurance Company. The life insurance program was a contributory one, in which the employee and Phillips each paid a part of the total cost. On September 1, 1968, a Long-Term Disability Program was arranged by Phillips as a rider to the group life insurance policy. Roe elected to enroll in the disability program, and Phillips made a payroll deduction from Roe's wages to pay for this particular insurance.

As indicated, in 1972 Roe became disabled and ceased to be actively employed by Phillips. Roe's disability was recognized by General American, which commenced paying Roe the disability benefits provided for by the policy. These payments continued until 1977, when General American, after an investigation into Roe's current physical condition, concluded that Roe was no longer disabled within the meaning of the policy. After making two monthly benefit payments erroneously and as a result of mistake, General American stopped disability benefits. Roe then brought the present suit to have disability benefits resumed.

Roe filed his suit in a state court of Oklahoma, and named both General American and Phillips as defendants. General American and Phillips caused the action to be removed to the United States District Court for the Northern District of Oklahoma. Their primary basis for removal was the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.* Secondarily, General American claimed that as between it and Roe, there was complete diversity, and that Phillips had been joined as a party defendant, even though Roe had absolutely no claim against Phillips, in order to defeat removal on the basis of diversity. The federal district court denied Roe's motion to remand, and held that the case was properly removed under ERISA.

In the federal district court, Roe indicated that he didn't really care whether his case was heard in federal or state court, but that he felt it his duty to advise the court that there was a split of authority as to whether an insurance program of the sort here involved came within the ambit of ERISA. On appeal, however, Roe argues as

his primary ground for reversal that the federal district court did not have jurisdiction to hear the case, and that the judgment entered should be vacated and the cause remanded with directions that the district court remand the case to the state court of Oklahoma.

Recognizing that there is some split of authority, we believe that the insurance program of the sort here involved does come within the ambit of ERISA, and that the case was properly removed. The total plan is an "employee welfare benefit plan" within the meaning of 29 U.S.C. § 1002(1). In support of our conclusion, see, for example, *Donovan v. Dillingham,* 688 F.2d 1367 (11th Cir.1982); *Standard Oil of California v. Agsalud,* 633 F.2d 760 (9th Cir.1980), *aff'd, without opinion,* 454 U.S. 801, 102 S.Ct. 79, 70 L.Ed.2d 75 (1981); *Reiherzer v. Shannon,* 581 F.2d 1266 (7th Cir.1978).*

On the merits of the controversy, the district court, based both on medical evidence and evidence relating to the work which Roe was, and for some time had been, performing, held that General American was justified in terminating disability payments on the ground that Roe was no longer totally disabled as required by the insurance policy. The evidence offered concerning *continuing* disability was perhaps conflicting and subject to varying inferences. Nevertheless, our study of the record indicates that there is support for the district court's finding that, as of 1977, Roe was no longer disabled within the terms of the policy. As of that date, Roe was, and for several years had been, in the cattle business. He had been buying and selling cattle on a substantial basis and was expecting a profit, and did in fact make some profit, depending of course on current market conditions. Roe was also performing livestock hauling, negotiating real estate sales, and doing some auctioneering. In short, there is evidence to support the district court's finding that as of 1977 Roe was no longer disabled within the meaning of the policy.

On appeal, Roe doesn't really attack the sufficiency of the evidence. Rather, he complains that the district court failed to take into consideration all of the factors enumerated in *Rushing v. Travelers Ins. Co.,* 133 F.Supp. 707, 709–10 (E.D.Okl.1955) and followed by the Supreme Court of Oklahoma in *Metropolitan Life Ins. Co. v. Fisher,* 382 P.2d 434, 440 (Okl.1962). Those cases indicate that before an insured can be found to be able to perform "any occupation," as distinguished from his original or usual occupation, such factors as the insured's education, experience, ability to follow another vocation, together with the dignity, permanence, and amount of income which can be earned from the substitute or alternative occupation must be considered.

Roe states that the district court by its memorandum opinion considered only the factors of amount of income and dignity, and ignored the remaining standards. Such is not our understanding of the matter. The district court in its order, in fact, mentioned the very cases which listed *all* the factors referred to above. Thereafter, the district court made specific mention of the amount of income and dignity factors, but such does not mean that it thereby ignored the others.

The district court's judgment for General American's counterclaim was based on the fact that after it determined that Roe was no longer disabled, it paid, through mistake and error, two additional monthly payments to Roe. On appeal, Roe raised no objection to the judgment entered on General American's counterclaim.

Judgment affirmed.

---

* It would appear that jurisdiction could have also been based on diversity. There was diversity between Roe and General American. Phillips was a resident of Oklahoma. However, the joinder of a resident defendant against whom no cause of action is pled, or against whom there is in fact no cause of action, will not defeat removal. *Dodd v. Fawcett Publications, Inc.,* 329 F.2d 82 (10th Cir.1964). In the instant case, Phillips was dismissed from the proceedings at the conclusion of Roe's evidence.