**WATCH HILL PARTNERS, INC., Plaintiff,**

v.

**James BARTHEL, Defendant.**

**C.A. No. 04–172S.**

United States District Court, D. Rhode Island.

Sept. 27, 2004.

---

R. Bart Totten, Adler Pollock & Sheehan P.C., Providence, RI, for Plaintiff.

Donna M. Lamontagne, Zizik, Powers, O'Connell, Spaulding & Lamontagne, P.C., Providence, RI, for Defendant.

### *DECISION AND ORDER*

SMITH, District Judge.

Diversity jurisdiction demands both diversity of citizenship and satisfaction of the jurisdictional amount, which requires that the matter in controversy exceed $75,000. 28 U.S.C. § 1332(a)(1). At issue in this case is whether a defendant (who has removed a case from state to federal court) may rely on a counterclaim to meet that $75,000 jurisdictional threshold. While a minority of courts have held that a counterclaim may be used in calculating the amount in controversy, the majority of courts considering this question have held, as does this Court, that a counterclaim may not be considered to determine the requisite amount in controversy for purposes of removing a case to federal court based on diversity jurisdiction. Plaintiff's Motion to Remand is therefore granted.

### I. *Background*

James Barthel ("Defendant"), a resident of Massachusetts, was employed by Watch Hill Partners, Inc. ("Plaintiff" or "Watch Hill"), from December 9, 2002, until December 8, 2003, as a sales representative. Watch Hill is a corporation organized under the laws of the State of Rhode Island and has its principal place of business in Providence, Rhode Island. This dispute arises out of a disagreement over the interpretation of a stock option agreement between Watch Hill and Barthel, as well as the payment of certain commissions to Barthel.

Around December 9, 2002, Watch Hill gave Defendant the option to purchase shares of the common stock of Watch Hill pursuant to the Non–Qualified Option to Purchase Shares of Common Stock Under the Amended and Restated Watch Hill Partners, Inc., 2000 Stock Option Plan ("Stock Option"). Defendant could exercise this option immediately or at any time until he was no longer employed by Plaintiff. If Defendant was terminated and the termination was involuntary, the option extended to within thirty days after the date of the involuntary termination. On April 15, 2004, more than three and one half months after Defendant's employment ended, Defendant notified Watch Hill of his intention to purchase 3,333 shares of common stock.

Defendant's employment ended on December 8, 2003, although it is contested which party initiated the termination. Defendant alleges that Plaintiff terminated his employment on the day he returned to work from a several week disability leave, and one day prior to the vesting date for the Stock Option. Plaintiff, on the other hand, claims that Defendant terminated his employment of his own will.

The parties' dispute also involves the payment of commissions to Defendant. During his employment, Defendant was paid a base salary of $85,000 per year, as well as $32,847.70 in commissions. Pursuant to Plaintiff's Sale Incentive Plan, there were three requirements for Defendant to earn a commission: (a) commissions on monthly revenues did not become due and payable until those revenues were collected; (b) Defendant had to be employed by Plaintiff when the revenues were collected; and (c) Defendant had to be the employee

responsible for the underlying sale giving rise to the commission. Plaintiff alleges in its Complaint that it overpaid Defendant by $6,238.31 in unearned commissions. Defendant alleges that $44,321 in earned commissions were not paid by Plaintiff.

On March 12, 2004, Barthel filed a non-payment of wages complaint with respect to unpaid commissions with the Massachusetts Attorney General's Office. The administrative filing is a prerequisite to filing suit under the Massachusetts Wage Act. Mass. Gen. Laws ch. 149, § 150 (2004). On April 13, 2004, Barthel filed a charge with the Massachusetts Commission Against Discrimination (the "MCAD"), charging Watch Hill with allegations of discrimination and retaliation based upon his exercise of his rights under federal law and related Massachusetts state statutes. For both administrative actions there is a ninety-day waiting period, during which the employee may not pursue a civil action, unless the Attorney General and/or the MCAD assents in writing to an earlier filing.

On April 23, 2004, prior to the running of the waiting period on Defendant's claims, Plaintiff filed a three-count Complaint in Providence County Superior Court. Count I of Plaintiff's Complaint requested a declaratory judgment regarding the rights and obligations of the parties under the Stock Option. Counts II and III alleged breach of contract and unjust enrichment, respectively, for the overpayment of commissions.

■ Defendant removed the Rhode Island state court action to this Court pursuant to 28 U.S.C. § 1441(a) on grounds of diversity of citizenship.[1] Plaintiff has moved to remand the case to state court because the requisite jurisdictional amount is not satisfied and, as a result, the Court lacks subject matter jurisdiction. After objecting to the Motion to Remand, Defendant filed a counterclaim asserting five claims for relief: (1) breach of the Massachusetts Wage Act; (2) unjust enrichment; (3) breach of contract; (4) breach of the duty of good faith and fair dealing; and (5) breach of the covenant of good faith and fair dealing.

## II. *Analysis*

■ Removal of an action to federal court is governed by 28 U.S.C. § 1441, which provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant. . . ." The removal statute requires that the federal court would have original jurisdiction over the case. *FLEXcon Co., Inc. v. Ramirez Commercial Arts, Inc.*, 190 F.Supp.2d 185, 187 (D.Mass. 2002); *see Grubbs v. Gen. Elec. Credit Corp.*, 405 U.S. 699, 702–03, 92 S.Ct. 1344, 31 L.Ed.2d 612 (1972). The defendant asserting removal has the burden of establishing jurisdiction. *See Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 4 (1st Cir.1999).

1. The Defendant asserts for the first time in his Opposition to the Plaintiff's Motion to Remand that the Court also has subject matter jurisdiction based on a federal question because the discrimination claims involve federal questions under the Age Discrimination in Employment Act, the Americans with Disabilities Act and the Family Medical Leave Act. However, it is settled law that federal question jurisdiction is determined based solely on the plaintiff's complaint. A federal question raised as a defense or in a counterclaim cannot form the basis of federal question jurisdiction. *See Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908); *see also Templeton Bd. of Sewer Comm'rs. v. Am. Tissue Mills of Mass., Inc.*, 352 F.3d 33, 37 (1st Cir.2003). Therefore, this alternative ground for asserting federal jurisdiction over the action is unavailing.

28 U.S.C. § 1332(a) states that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States...." It is undisputed that the parties in this case are citizens of different states for purposes of 28 U.S.C. § 1332(a); the dispute focuses solely on the amount in controversy.

■ The amount in controversy requirement is ordinarily determined from the plaintiff's complaint. *See Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961); *Coventry Sewage Assocs. v. Dworkin Realty Co.*, 71 F.3d 1, 4 (1st Cir.1995)(stating that "it has long been the rule that a court decides the amount in controversy from the face of the complaint"). Here, Plaintiff's Complaint asserts damages in the amount of $6,238.31 for commissions overpaid to Defendant,[2] a sum that falls far short of the $75,000 jurisdictional requirement set forth in 28 U.S.C. § 1332(a).

The Defendant asserts, however, that the amount in controversy requirement may be satisfied through consideration of his counterclaim.[3] The First Circuit appears to have rejected the use of counterclaims to establish the jurisdictional amount requirement. *See Ballard's Serv. Ctr., Inc. v. Transue*, 865 F.2d 447, 449 (1st Cir.1989) (stating without differentiating between permissive and compulsory counterclaims, that "[t]itle 28 U.S.C. § 1446 authorizes removal only by defendants and only on the basis of claims brought against them and not on the basis of counterclaims asserted by them"); *see also, Oliver v. Haas*, 777 F.Supp. 1040, 1042 (D.P.R.1991) (stating that majority of courts do not consider defendant's counterclaim "whether permissive or compulsory" in determining required jurisdictional amount); *FLEXcon*, 190 F.Supp.2d at 187; *Williams v. Beyer*, 455 F.Supp. 482, 483 (D.N.H.1978). The majority of courts faced with this issue also have held that even compulsory counterclaims are not to be considered for purposes of determining whether the jurisdictional amount is pled. *See, e.g., St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). Thus, even if this Court were to assume that Defendant's counterclaim is compulsory,[4] it would not consider the counterclaim for purposes of determining the amount in controversy.[5] Of course,

---

**2.** In addition to its request for damages, the Plaintiff also seeks a declaratory judgment. However, even if the Court were to place a monetary value on the declaratory judgment count, Plaintiff still falls short of the jurisdictional amount. If Barthel purchased the 3,333 shares at a purchase price of $.20 per share and was permitted to sell the shares during a recently completed sale of Watch Hill to MasterCard Advisors, his profit would have been less than $6,000. These damages, along with the $6,238.31 in alleged damages relating to the overpaid commissions, would still only be in the vicinity of $12,000—far short of the amount needed to establish diversity jurisdiction.

**3.** Defendant claims that he is entitled to $44,000 for unpaid commissions. He alleges

that if the claim for unpaid commissions is successful, The Massachusetts Wage Act, pursuant to Mass. Gen. Laws ch. 149, § 150 (2004), provides that the party's damages are automatically tripled. The Defendant therefore alleges damages in the proximity of $132,000.

**4.** Defendant did not indicate in his pleadings, in court, or in the memoranda filed relating to this Motion whether his counterclaims are compulsory or permissive under Rule 13.

**5.** It is true that a minority of courts—out of concern for fairness to litigants and issues of efficiency—have looked to a defendant's compulsory counterclaim for purposes of determining the amount in controversy. *See, e.g., Swallow & Assocs. v. Henry Molded Prods.,*

nothing prevents the Defendant from bringing his claims in federal court separate and apart from this litigation, assuming jurisdictional prerequisites are met.

## III. *Conclusion*

The Plaintiff's Motion to Remand the Complaint is GRANTED.

IT IS SO ORDERED.

*Inc.*, 794 F.Supp. 660, 663 (E.D.Mich.1992); *Hatridge v. Aetna Cas. & Surety Co.*, 415 F.2d 809, 816 (8th Cir.1969); *Congaree Broadcast-* *ers, Inc. v. TM Programming, Inc.*, 436 F.Supp. 258, 262 (D.S.C.1977). The First Circuit, however, has not adopted this view.